IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

| | |
|---|---|
| IN RE: Steven G. and Lisa R. Politte, Debtors | No. 3:04-bk-74335 |
| | Ch. 7 |
| Edwin McMahon and Tystar Petroleum Corporation | Plaintiffs |
| vs.    3:04-ap-07215 | |
| Steven G. Politte and Lisa R. Politte | Defendants |

**MEMORANDUM OPINION**

On June 28, 2004, the debtors, Steven G. Politte and Lisa R. Politte, filed a voluntary petition for relief under chapter 7 of the bankruptcy code. On October 12, 2004, the plaintiff, Edwin McMahon, timely filed a complaint to determine the dischargeability of certain debts of the debtors under 11 U.S.C. § 523(a)(4) and (a)(6). McMahon subsequently amended the complaint to add Tystar Petroleum Corporation as a party plaintiff. The plaintiffs sought damages in excess of $300,000.00 as a non-dischargeable debt. The debtors filed an answer to the complaint, in which they denied that they were liable under any provision of 11 U.S.C. § 523. The Court held a trial on the merits on November 28 and 29, 2007, and took the matter under advisement.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**Background**

Edwin McMahon [McMahon] and the debtor, Steven G. Politte [Politte], worked together at Empire Gas [Empire] prior to their becoming involved as co-shareholders of Tystar Petroleum Corporation [Tystar]. McMahon held a management position at Empire, and

Politte, who has a degree in accounting, exercised the functions of accounting and auditing for Empire. According to McMahon, Empire had over 300 retail outlets located in 38 states, and Politte was responsible for auditing the books of these retail outlets, looking specifically for financial fraud and accounting irregularities.

The parties decided to go into business together and formed Tystar, a Missouri corporation, in March 1999. McMahon and Politte were each 50% owners, and Politte was the secretary of the corporation and had check writing authority. Tystar was set up to own and operate convenience stores in Mountain Home and Bull Shoals, Arkansas. A board of directors was formed and McMahon and Politte were each listed as both directors and officers of the corporation. The original plan was for McMahon to be responsible for obtaining financing and Politte to serve as manager and oversee the construction and operation of the Tystar convenience stores. A pro forma had been prepared by Politte that indicated the venture would be profitable. However, after construction was completed and operations began, the stores were in financial trouble from the beginning. Because McMahon ultimately suspected that Politte was misappropriating funds, he filed a state court action in Missouri against Politte. On June 30, 2003, the Missouri court ordered McMahon and Politte to have equal access to the books, records, and funds of Tystar, with each of the parties responsible for running one of the stores. The debtors filed their bankruptcy petition a year later. McMahon subsequently purchased the debtors' one-half interest in Tystar from the trustee, making McMahon the 100% owner of Tystar prior to the trial of this adversary proceeding.

## Discussion and Findings
### Lisa R. Politte

Lisa R. Politte is a co-defendant in this adversary proceeding. As a preliminary matter, the Court finds that although Lisa Politte may have benefitted by the actions of her husband and co-debtor, Steven G. Politte, the evidence is lacking to make her responsible for the debt under either § 523(a)(4) or (a)(6), and the complaint against her is dismissed.

**Section 524(a)(4)**

The bankruptcy code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" 11 U.S.C. § 523(a)(4). This subsection is comprised of three separate causes of action: (1) fraud or defalcation while acting in a fiduciary capacity, (2) embezzlement, and (3) larceny. The Court will address each one in turn.

### *Fraud or defalcation while acting in a fiduciary capacity*

The first cause of action requires fraud or defalcation while acting in a fiduciary capacity. A defalcation is "the misappropriation of funds held by a fiduciary and includes the innocent default of a fiduciary who fails to account fully for money received." *International Fidelity Ins. Co. v. Herndon* (*In re Herndon*), 277 B.R. 765, 768 (Bankr. E.D. Ark. 2002) (citing *Tudor Oaks Ltd. P'ship v. Cochrane* (*In re Cochrane*), 124 F.3d 978, 984 (8th Cir. 1997)). The issue of whether a relationship is a fiduciary relationship within the meaning of § 524(a)(4) is a matter of federal law. *Cochrane*, 124 F.3d at 984. According to the Eighth Circuit, the code's reference to a "fiduciary" applies only to trustees of express trusts, or through a statute or other state rule creating fiduciary status that is "cognizable" in bankruptcy proceedings. *Barclays Am./Bus. Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875, 878 (8th Cir. 1985) (citing *Davis v. Aetna Acceptance Co.*, 298 U.S. 328, 333 (1934) for the express trust reference). In this case, there was not an express trust created between the parties specifying a fiduciary relationship. Additionally, neither party cited to or provided the Court with a Missouri statute or other state rule creating a fiduciary relationship.[1] Accordingly, the Court finds that Politte is not a fiduciary for purposes of § 523, and the first cause of action under § 523(a)(4) fails.

---

[1] Although Missouri case law holds that by virtue of his position, an officer and director of a corporation occupies a fiduciary relation to the corporation, *see, e.g., Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 382 (Mo. App. E.D. 2000), the Court finds that the fiduciary status recognized by Missouri case law is not cognizable in a bankruptcy proceeding to determine the dischargeability of a debt under § 523(a)(4). *Cf. Drenttel v. Jensen-Carter* (*In re Drenttel*), 403 F.3d 611 (8th Cir. 2005) (finding that state exemption statutes do not invoke entire law of the state).

### *Embezzlement*

The second cause of action under § 523(a)(4) considers whether Politte has embezzled property or funds. For the purposes of § 523(a)(4), embezzlement

> is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Schultz*, 46 B.R. 880, 889 (Bankr. D. Nev. 1985). A plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used.

*Belfry v. Cardozo* (*In re Belfry*), 862 F.2d 661, 662 (8th Cir. 1989). According to a Missouri bankruptcy court, "[i]f the debtor has appropriated funds for his own benefit, and has done so with fraudulent intent or by deceit, then it would appear the creditor need prove no more . . . ." *In re Beasley*, 62 B.R. 653, 655 (Bankr. W.D. Mo. 1986) (citing *U.S. v. Walker*, 677 F.2d 1014 (4th Cir. 1982)). To prevail, McMahon (or Tystar) must prove that Politte appropriated corporate funds for his own benefit, and that Politte was not lawfully entitled to the use of those funds for the purposes for which they were in fact used. These elements have been met in the present case. For the reasons stated below, the Court finds that Politte embezzled funds as that term is understood under § 523(a)(4), and the amount that was proven by a preponderance of the evidence is deemed to be a non-dischargeable debt in favor of the plaintiffs.

Politte was trained as an accountant and auditor. As such, and as a part of his previous position, he was well versed in various methods of manipulation of accounts, deception, and obfuscation to hide and take funds and assets to which one is not entitled. Politte engaged in the appropriation of funds for his own benefit through different methods, means, and devices, including, but not limited to:

- Providing for reimbursements owed to Tystar to be made to himself personally;
- Depositing Tystar tobacco rebate checks in the corporate account, while removing amounts equal to the rebate checks in the form of currency, or otherwise unaccounted for;
- Paying his personal health insurance premiums from the corporation without the knowledge or permission of the co-stockholder of the

corporation. Politte testified that it was his agreement with McMahon for Tystar to pay his health insurance premiums. McMahon denied there was such an agreement. Evidence of Politte's lack of credibility in this regard is supported by the fact that the debtor *initially* paid for his own medical insurance premiums. Nevertheless, with the exception of the initial payments, Politte ultimately paid virtually all of his medical insurance premiums with corporate funds without the knowledge or permission of McMahon. Further, Politte gave no explanation as to why he *ever* paid for his own health insurance premiums, which is some evidence that Politte knew Tystar was not responsible for the payments;

- Permitting cash pay-outs to Politte without approval or other appropriate documentation;
- Diverting Tystar funds to or on behalf of Politte or his family. For instance, there were payments of goods and services on behalf of Politte with Tystar funds, including payment for delivery of propane to the debtors' home, curtains, moving expenses, car detailing, vehicle repairs, dining out expenses (including "kids meals"), clothing, groceries, and personal property taxes. The debtor's lack of credibility in this matter is supported by the fact that he had advised the co-stockholder by letter, (Pl. Ex. 46), that he was not reimbursing himself for fuel, when, in fact, he was; and then failed to reflect those fuel reimbursement expenses on daily income and expense statements given to the co-stockholder, even though all other expenses were listed. McMahon was led to believe by Politte that no such reimbursements were being made;
- Making payroll overpayments to Politte and his wife, Lisa R. Politte;
- Paying income withholding taxes by Tystar that were the personal obligation of Politte when, in fact, no other employees of Tystar had their personal income withholding taxes paid by the corporation (which indicates to the Court the payment was not inadvertent);
- Recapturing working capital without the knowledge or permission of the co-stockholder of Tystar;
- "Reimbursing" what may have otherwise been legitimate expenses, but which were paid at least twice on different occasions. On numerous occasions the debtor reimbursed himself more than once for the same invoice. (This is giving the benefit of the doubt to Politte that the invoice was a legitimate purchase for Tystar in the first place.) Politte explained that the double payments were simply inadvertent on his part. However, it is unlikely that a person with the accounting background of Politte would not have checked to determine whether such invoices (some of which were eight to twelve months old) had been paid before reimbursing himself a second time. Politte not only had a duty to check and determine whether the invoices had been paid previously, but the same would have been consistent with standard accounting practices;

5

- Paying certain personal telephone services owed by Politte without the knowledge or permission of the co-stockholder;
- On occasion, "reimbursing" himself for certain soft drink products (1) without appropriate verification or invoicing by the vendor, (2) for some amount more than what was otherwise reflected by the invoice, or, (3) without a record reflecting that Politte actually paid those invoices for which he "reimbursed" himself.

More evidence of Politte's self-dealing and deception is shown by his manipulation of the books by coding payments to several different categories in an apparent attempt to make unclear the true purpose of the payment of the funds. For example, Politte coded certain payments to "Maintenance" when, in fact, such payments were made to himself. Politte did what he could to confuse McMahon and make difficult the ability of McMahon to trace the funds of the corporation by mis-coding the accounts, locking McMahon out of the computer system, and setting up twelve separate personal bank accounts (some with deposits consistent at various times with "unaccounted funds" of Tystar). In addition, Politte kept a spiral notebook to record cash receipts, but the notebook was not disclosed or provided to McMahon in his review of the books and records.

The debtor's lack of credibility is further reflected in the proof in numerous ways. First, Politte failed to list in his petition and schedules the sale of certain assets, such as a Sea-Doo® wave runner. Second, Politte provided an affidavit to the Internal Revenue Service that there were no past due taxes owed to the Internal Revenue Service when there was apparently no less than $4000.00 in past due taxes. Politte's explanation that he was unaware of the claim was not convincing, particularly because he is an accountant by trade. Finally, Politte's lack of credibility is supported by the finding of the Arkansas Appeal Tribunal that Politte's annual salary was $40,000.00 instead of the $44,000.00 claimed at trial by Politte. (Pl. Ex. 29.)

Although the Court is suspicious that Politte may have misappropriated or taken carwash currency, laundry currency, or "laundry coins" as summarized on Plaintiff's Exhibit 44,

the Court cannot say that the amounts claimed have been proven by a preponderance of the evidence. Politte testified that the apparent discrepancies in the amounts of money reported could have resulted from local market conditions, including the elevated lake levels at that time, the burning of a local competitor laundromat that occurred later, the installation or refurbishing of the new counter machines, and perhaps the involvement of third parties. Also, although part of the funds listed on Defendant's Exhibit 1, referred to in Plaintiff's Exhibit 44 as Diversion of Funds by Tystar Check, are included in the total damage award, a substantial portion of the entries were not proven to be non-dischargeable debts by a preponderance of the evidence. Finally, the Court further finds that Politte is not responsible for the Working Interest claimed by McMahon in the amount of $61,725.06, nor was there sufficient evidence to prove the non-dischargeability of the Initial Capitalization of $2100.00.

### *Larceny*

The third cause of action under § 523(a)(4) involves larceny. Larceny is the "fraudulent and wrongful taking and carrying away of the property of another with the intent to convert the property to the taker's use without the consent of the owner." 4 Collier on Bankruptcy ¶ 523.10[2], at 523-76 (15th ed. rev.). The primary difference between larceny and embezzlement involves the initial taking of the property. For larceny, the original taking must be unlawful. *Id*. Because Politte was the manager of Tystar's stores, all of the property alleged to have been taken by Politte came into Politte's possession or control in a lawful manner. Because of this, any of the misappropriated property or funds taken by or on behalf of Politte did not amount to larceny as that term is used in § 523(a)(4), and the third cause of action under § 523(a)(4) fails.

### Section 523(a)(6)

The plaintiffs have also sought the non-dischargeability of their debt on the basis of a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Court finds that the burden for proof for a willful and malicious injury has not been sustained. In the Eighth Circuit, the plaintiff must

establish that the debt arises from an injury that is both willful and malicious.  *Barclays Am./Bus. Credit, Inc. v. Long* (*In re Long*), 774 F.2d  875, 880 (8th Cir. 1985).  Willful means "intentional" or "deliberate."  *Id*.  In this instance, the Court finds that Politte's actions were willful.  Malicious, on the other hand, means "conduct more culpable than that which is in reckless disregard of creditors' economic interests and expectancies."  *Id*. at 881.  Stated another way, a malicious injury is "targeted at the creditor . . . ."  *Id*.  Although McMahon's injuries were damaging, the Court does not find that the requisite malice was proven by a preponderance of the evidence.  The Court believes that Politte's actions were calculated to benefit himself; any harm to McMahon is a result of Politte's reckless disregard for McMahon's economic interests.  For this reason, the Court denies the plaintiffs' complaint under § 523(a)(6).

**Damages**

Based on the above findings and a careful review of the evidence presented at trial, the Court finds that the portion of the debt owed by the separate debtor, Steven G. Politte, to the plaintiffs, Edward McMahon and Tystar Petroleum Corporation, that was obtained by embezzlement is $77,172.37, and determines that debt to be non-dischargeable under 11 U.S.C. § 523(a)(4) as to the separate debtor, Steven G. Politte.  By separate order, and in accordance with Federal Rule of Bankruptcy Procedure 9021, the Court will enter its judgment in favor of Edward McMahon and Tystar Petroleum Corporation and against the separate debtor, Steven G. Politte, in the amount of $77,172.37.

The plaintiffs also asked for the recovery of their attorney fees in the amount of $51,140.61.  According to the Eighth Circuit, attorney fees provided by contract can become part of a non-dischargeable debt under § 523.  *Alport vs. Ritter* (*In re Alport*) 144 F.3d 1163, 1168 (8th Cir. 1998).  However, in this case there is no contract that recites that attorney fees would be paid to the prevailing party in the event of a contractual dispute.  Furthermore, there is no specific provision under the bankruptcy code that allows for the reimbursement of the plaintiffs' attorney fees.  Accordingly, the Court finds there is no basis under which the Court can award attorney fees to the plaintiffs, and

that part of the plaintiffs' complaint is denied.

Finally, as stated at the beginning of this opinion, the Court finds that although Lisa Politte may have benefitted by the actions of Steven G. Politte, there was insufficient evidence to hold her responsible for the debt under § 523(a)(4) or (a)(6), and the complaint against her is hereby dismissed.

IT IS SO ORDERED.

December 19, 2007
DATE

BEN T. BARRY
UNITED STATES BANKRUPTCY JUDGE

cc: Gail Inman-Campbell, attorney for the plaintiffs
David L. Ethridge, attorney for the debtors